# MOTION IN LIMINE 3
# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Case No. 2:20-cv-00943

**INCREDIBLE FEATURES INC.;**
**JEFFERY R. WERNER and**
**BRIAN R. WOLFF**

*Plaintiffs*

v.

**BACKCHINA LLC; And DOES 1**
**through 10 inclusive,**

*Defendants*

EXPERT REPORT

GARY ELSNER

November 21, 2021

1

## I.   SCOPE OF MY ENGAGEMENT

I have been engaged as an industry expert in the field of commercial photography as it relates to photo licensing. I have been asked to review the applicable records and information and provide an opinion on the appropriate Fair Market Value (FMV) for the thirty-seven (37) infringed images and the forty-one (41) uses that are the subject of this litigation.

## II.   DOCUMENTS AND SOURCE MATERIALS

In preparing this Report I have reviewed the following documents and information:

A. The Complaint filed Jan 29, 2020
B. Exhibits A – J which are part of the complaint
C. Phone interview with Plaintiffs Brian Wolff and Jeffery Werner – Nov. 17, 2021
D. https://www.agency.incrediblefeautures.com
E. Various licenses accomplished for the "Femskin" images.
F. Various licenses accomplished for the "Buffalo Whisperer" images.
G. Various licenses accomplished for the "Snuggery" images.
H. Various licenses accomplished for the "Amazon Eve" images.
I. Various licenses accomplished for the "Huntress" images.
J. Various licenses accomplished for the "Giraffe Woman" images.
K. Order Grant Plaintiff's Motion for Damages - Jeffery R. Werner v. Evolve Media LLC dated June 22, 2020.
L. Complaint – Jeffery Werner v. Priceonomics dated June 16, 2020, and supporting Exhibits 1 – 3.
M. Consent Judgment - Jeffery Werner v. Priceonomics filed August 4, 2021
N. A summary document of prior settled copyright infringements
O. www.backchina.com
P. www.similarweb.com

Exhibit A
- 12 -

## III.  QUALIFICATIONS

To elaborate on my experience in commercial photography that qualifies me as an expert in this matter I would offer the following as a supplement to my Curriculum Vitae, which is attached as EXHIBIT 1.

I started my career in the photography industry in 1963, working for a small company called Freelance Photographers Guild ("Freelance").
In 1971, Freelance and Alpha Photo Associates, a rival company, merged operations and eventually consolidated their libraries at one location. I was promoted to General Manager while also maintaining my position as Sales Manager. My responsibilities included both supervising the office staff as well as continuing to personally handle the company's key photographers and clients.

During the ensuing twenty-seven years the company continued to grow in size and sales volume.  When I left the company in 1998, FPG International Corp. as Freelance Photographers Guild became known had a staff of more-than two hundred and represented more-than five hundred photographers and was accomplishing annual licensing revenues of more-than $30 million.

In February of 1999, after leaving FPG and sitting out a six-month non-compete during which I built a business plan, I opened my consulting company – Gary Elsner Associates Inc.

My consulting work within the industry included, alternative dispute resolution in copyright matters, as well as the expert witness services I occasionally provide, I have been involved in providing many different services to clients over the past twenty years, serving more than one hundred clients.  My consulting services have included:

- Website development work regarding design and promotional elements;
- Sales training for photo agencies;
- Review of business practices and operating documents for photographers selling directly as well as for photo agencies;
- Brokering the sale of stock photo collections;
- Valuation of stock photo collections

Exhibit A
-  13  -

- Contract negotiations for existing stock well as personal photography collections;
- Obtaining additional rights for clients for previously licensed images;

While I do not advertise my consulting services (other than as they are described on my website), over the course of the past twenty-one years I have worked on approximately one hundred litigation projects where I provided expert witness and consulting services to companies and law firms throughout the country and abroad.

The following is a complete listing of matters in which I have testified at depositions and trials during recent years:

August 2012 – State of California, Superior Court – County of Los Angeles SINISHA NISEVIC, Claimant, vs. SAFECO INSURANCE COMPANY; THE CITY OF LOS ANGELES Respondents. I appeared at Trial on behalf of Plaintiff, Sinisha Nisevic. My testimony addressed the value of a collection of photos that were destroyed in a sewerage flood.

March 11, 2016 – State of New York, Case No. 15-cv-002 (GBD) (S.D.N.Y) McGraw-Hill School Education Holdings LLC and McGraw-Hill Global Education Holdings LLC v. Minden Pictures, Inc. I was subpoenaed to appear for Deposition but was not engaged by either party in the dispute. The matter involved charges of copyright infringement.

November 29, 2016 – United States District Court, Central District of California, Western Division. Evox Productions LLC v. Kayak Software Corporation Case No. CV15-05053-PSG-AGR. I appeared at Deposition on behalf of Defendants, Kayak Software Corporation. The matter involved charges of copyright infringement.

June 8, 2017 – Boston, Massachusetts, Photographic Illustrators Corp v. Osram Sylvania Inc.  Deposition testimony, I was deposed on behalf of my client, Osram Sylvania Inc. The matter involved charges of copyright infringement.

June 23, 2017 – Boston, Massachusetts, Photographic Illustrators Corp v. Osram Sylvania Inc.  Arbitration hearing testimony. I testified on behalf of

Exhibit A
- 14 -

Defendant, Osram Sylvania Inc. The matter involved charges of copyright infringement.

November 12, 2020 – Virtual Deposition, D'Pergo v. Sweetwater.  I testified on behalf of Defendant, Sweetwater.

June 28, 2021 – Concord New Hampshire, Trial D'Pergo v. Sweetwater.  I testified on behalf of Defendant, Sweetwater.

I have never published in print or online any articles or publications regarding commercial photography or any other subject matter.

Over the course of my career, I have been recognized as an expert in matters involving commercial photography in many jurisdictions, including California (multiple times), Louisiana, Minnesota, Montana, New Hampshire and New York (multiple times). I have been qualified as an Expert in Federal Court on matters involving Copyright Infringement in Louisiana, New Hampshire and New York.

## IV.   COMPENSATION

My hourly rate for providing my services in this case is $750.00. I have reviewed the names of all the individuals and companies involved in this dispute and confirm that there are no conflicts due to prior or current business dealings.  I have no prior relationships or interactions with any of the participants.  As an expert, I am being compensated to review information and provide opinions on various aspects of the dispute. My compensation is in no way based on the outcome of this dispute.

## V.   SUMMARY OF CLAIM

Plaintiffs own and operate a commercial photography business involved with the creation and licensing of unique images that they or other photographers they represent had accomplished. Plaintiff Incredible Features is the exclusive Licensor of Plaintiff Werner and Wolff's images and as such I will refer to Plaintiff Incredible Features as "Plaintiff IF" throughout this report with the understanding that any reference to Plaintiff IF's images includes those of Plaintiff Werner and Wolff which are the subject of this litigation.

5

Exhibit A

During a more-than seven-year period Defendant misappropriated the use of
thirty-seven of Plaintiff IF's images for a total of forty-one individual uses
without obtaining a license for their use.  Defendant placed them on its
website, www.BackChina.com, for various periods as defined in the
Complaint which was filed on January 29, 2020.

The above is a very brief statement of basic facts.  Additional facts relating
to my opinions are also contained throughout my report.


## VI.   AN EVALUATION OF THE THIRTY-SEVEN INFRINGED IMAGES

A. The images that are the subject of this litigation were provided as part of
the Complaint and are defined as Exhibits A – J.  They can also be viewed
in greater detail with login permission on Plaintiff IF's website
https://www.agency.incrediblefeatures.com/

B. I have worked in the commercial photography industry for more-than fifty
years and have personally view the libraries of hundreds of commercial
photo agencies and specialty libraries of individual photographers.  I have
never seen a collection that specializes in what can only be described as
extraordinarily unique images.  Visiting the web site is akin to traveling
through Ripley's Believe It or Not via imagery.  There can be no question
that Plaintiff has cornered the worldwide market for images of this genre.

C. My evaluation of the images that are the subject of this litigation is that
they are all of the highest quality and professionally staged as to create
maximum effect when used to illustrate a concept or sell a product.

D. As part of my interview regarding the images I learned that they are all
model released for advertising purposes with no limitations, thereby
making the images even more valuable, as commercial uses for model
released images in almost all instances command substantially higher
licensing fees than editorial or other non-commercial uses.  For perfect
clarity, commercials uses would include various forms of advertising or
promotion such as use in; magazine or newspaper ads, billboards,
brochures or mailers as well corporate or promotion websites.

Exhibit A

## VII.  PLAINTIFF IF'S WEB SITE WHERE THE IMAGES CAN BE LICENSED

A review of Plaintiff IF's website provided the following facts which are
relevant to my opinions and calculations regarding the infringement uses.

A. The website requires login and is password protected.
B. The home page provides a link for License Terms (EXHIBIT 2) which
   clearly warns the user that the images are protected by copyright.
C. An approved user has the ability to search for images either by providing
   keywords or selecting one of the offered categories for view.
D. A search return is provided that show large thumbnail size (roughly 2.5 x
   1.75 inches in size) images that match the selected topic.
E. If you click on any of the thumbnails you get a further search return for
   all similar images.
F. Under each thumbnail image are various icons which are from left to right
   a. An option to download a low-resolution file for the selected image
   b. An option to download a high-resolution file for the selected image
   c. The ability to add the selected image to a lightbox maintained on
      the website while the user does additional searches
   d. A button labeled "RM" when clicked reads "Rights Managed" image
   e. A copyright indicia symbol ©
   f. An icon of a lock when engaged indicates "available for"
   g. A navigational icon which when engaged offers options for
      download or printing.

G. It should be noted that there is no ecommerce option to purchase an
   online license for use.  Given the unique subject matter of Plaintiff IF's
   images it is most appropriate that pricing and licensing be accomplished
   by direct communication.
H. If you double click on any of the thumbnails an enlarged version of the
   image file appears (EXHIBIT 3) with additional options and navigation
   buttons for the user.
I. One of the navigation buttons available on this screen is "Request". If you
   click on it a new screen appears (EXHIBIT 4) with the user's email
   address field populated by the user's email address.  This functionality is
   designed as an alternative for the user to use to request license pricing
   for a specific image(s) the user is considering licensing.

Exhibit A

J.  During my interview with Plaintiffs, I was made aware of the following
additional processes regarding the website.

    a.  Plaintiff IF carefully screens potential users that attempt to register
for its website and as such, rejects approximately forty percent of
those applicants that they determine are either "sightseers" or
looking to acquire images for personal use.

    b.  Plaintiff IF has the ability to also limit the level of access to include
blocking images downloads as well as limiting downloaded files to
low resolution.

    c.  Plaintiff IF has the ability to monitor who downloads images and
which images they download.

K.  I confirmed that there was no record of Defendant requesting access to
Plaintiff IF's website or having made a request to download or license any
of Plaintiff IF's images.

## VIII. FAIR MARKET VALUE (FMV)

The standards for developing FMV of a hypothetical license are stated in the
following ruling in the U.S. Court of Appeals, Fourth Circuit:

"The fair market value of a copyrighted work is derived from an
objective, not a subjective, inquiry."

"Under the lost licensing fee theory, actual damages are generally
calculated based on 'what would have been reasonably required to pay
to a willing seller for [the] plaintiffs' work.' A willing buyer"

"The question is not what the owner would have charged,' nor what
the infringer might have been willing to pay."

"Rather, the objective inquiry focuses on the fair market value of the
work as 'negotiate[ed] between a willing buyer and a willing seller'
contemplating the use the infringer made."

"Evidence of licensing fees paid to other artists for the use of other
works may, in some cases, be sufficient to support the conclusion that
a copyright holder would have been entitled to such a fee for the use

Exhibit A
- 18 -

of his work; however, such evidence may properly be rejected as a measure of damages if it is too speculative."

731 F.3d 303 United States Court of Appeals, Fourth Circuit. Anthony Lawrence DASH, Plaintiff–Appellant v. Floyd Mayweather, Jr., an individual; MAYWEATHER Promotions; Mayweather Promotions LLC, a/k/a Mayweather Promotions LLC; Philthy Rich Records Inc.; World Wrestling Entertainment Inc., Defendants–Appellees.

Accordingly, my calculations will be based on what Plaintiff IF's licensing history and business practices are and have been regarding prior instances involving licensing for similar uses and for prior copyright infringement claims.

## IX.   PLAINTIFF IF'S BUSINESS PRACTICES REGARDING LICENSING

Unfortunately, the uniqueness of Plaintiff IF's images and the extraordinary nature of the subject matter of the images have resulted in Plaintiff IF's images being the ongoing and continuous victim of unauthorized infringement uses.  Over time Plaintiff IF has formulated and accomplished a defined policy regarding the pursuit and resolution of copyright infringement claims as they are uncovered. The per month pricing average that I calculated that was used by Plaintiff IF for its infringement pricing is similar to what Plaintiff IF routinely charges its customers that request a one-time license for an online use.

Plaintiff IF's policy regarding resolving copyright infringement claims can be defined as a five-step process.

A. Upon discovery of an unauthorized use of its images typically Plaintiff IF would contact the infringing party and makes a demand for full disclosure of all unauthorized uses made of their images.
B. Plaintiff IF additionally requires that the unauthorized be removed from whatever applications the images are currently appearing in.
C. Plaintiff IF makes a demand for payment based on a formula for pricing that is accomplished by Plaintiff IF for all licensing it transacts.
D. As might be necessary and practical, Plaintiff IF attempts at settlement negotiations are accomplish to forestall the need for initiation of litigation.

Exhibit A

E.  If settlement attempts cannot resolve the matter, litigation is initiated to protect the copyright of the images and obtain licensing fees and other damages they are eligible for under U.S. Copyright Law.

F.  Plaintiff IF has aggressively pursued instances of infringement when immediate attempts to affect an equitable settlement could not be accomplished.

1.  As an attachment to this report, I am providing a copy of the Order Granting Plaintiff's Motion for Damages regarding Jeffery R. Werner v. Evolve Media LLC dated June 22, 2020.

2.  As a direct result of my discussions with Plaintiffs I learned of Plaintiffs' history of settlement accomplished where the infringement use was the same or comparable to the infringements in this matter. I directed Plaintiffs to prepare the report so that I could include it in my report (EXHIBT 5) and consider it as part of my FMV calculations. In speaking with Plaintiffs and counsel, who was directly involved in most of the settlements covered by the exhibit, I learned that for the most part, each of the listed settlements involved uses that spanned periods of not less-than a year and in many cases multiple years of infringement uses.

3.  I also viewed a Complaint and Consent Judgment regarding Jeffery Werner v. Priceonomics. In this matter the parties ultimately affected a settlement in which the parties entered into a consent judgment for $80,000.00 for the infringing use of one of Plaintiff Werner's images on the Priceonomics website for a period of forty months.

Protecting the copyright for Plaintiff IF's images goes way beyond simply recovering revenues that were otherwise unjustly denied it. Plaintiff IF only offers its images under a Rights Managed licensing model in which are rights not otherwise convey by a license are retained.  If a client wants to continue using images they have licensed from Plaintiff IF, they must obtain an additional license, and in all cases all of the relevant information regarding the intended use must be disclosed.  This allows Plaintiff IF to control the licensing of each image and take advantage of exclusive licensing opportunities that can be quite lucrative.

During the course of my interview with Plaintiffs, I learned the following additional facts about their business policies and practices.

Exhibit A
- 20 -

- Plaintiff IF always requires complete usage specifics to include, the use
  application, the size and placement of the images being used as well as the
  territory of use and its term including specific dates or month(s) the use
  will occur.
- Plaintiff IF's policy is to never agree to a use in perpetuity or otherwise for
  an unlimited and undefined period of time. This requirement allows Plaintiff
  IF to monitor the use to ensure the use doesn't exceed the license term
  that was granted.  The policy allows Plaintiff IF to grant exclusive licenses
  to clients based on the known history of previously granted licenses.
- Plaintiff I will consider a slight discount (ten to twenty percent) on re-use
  licensing provided they are made in a timely manner prior to the additional
  use, are a continuation or extension of the original use and providing the
  additionally requested rights are available.

## X.    INFRINGEMENT CALCULATIONS

In accomplishing my calculations, I used the following observations as a
basis for my findings:

A. Plaintiff IF has provided me examples of its licensing for uses and my
   conclusion is that Plaintiff IF's pricing is consistent, and in most cases,
   substantially higher than what is generally charged to license traditional
   stock photos.
B. The Evolve dispute brought by Plaintiff Werner resulted in a calculation
   accepted by the court whereby Plaintiff Werner was awarded $62,787 in
   June 2020 for each of four infringed images.
C. As previously discussed in Section IX, F,2 of this report, EXHIBIT 5 of my
   report provides details on thirty-five previously accomplished settlements
   by Plaintiffs during the period May 2014 – September 2021. I relied on
   these settlements significantly as the uses were the same or similar to
   Defendant's infringing use and in all cases, represented infringements
   where no license was accomplished prior to the discovered infringing use
D. I excluded the Priceonomics Settlement where one image resulted in a
   license fee of $80,000 from my calculations.  I felt that was an
   extraordinary event and as such should be set aside when I performed
   my calculations.
E. I have determined that after inspection of Defendant's website, the use of
   Plaintiff IF's images on its website should be defined for pricing purposes

Exhibit A

as use on a commercial web site. EXHIBIT 6 of this report provides information I gleaned from the website that explains the goals and intentions of the website.  Even though the actual application of copy to the infringed images as they appeared on the website could be explained as editorial in nature, the intent and goal of the website is to provide goods and service to Chinese-speaking citizens worldwide.

F. EXHIBIT 7 provides an example of products and services that can be found for "shoppers" on the website.

G. EXHIBIT 8 provides insights on where the website users originate from which details that more-than forty percent of the website traffic originates from outside the U.S.

H. Based on my more-than fifty years of industry experience in dealing with infringements use, as thirty-seven of Plaintiff IF's images were infringed on by Defendant for multiple years there is no basis for any conclusion other than that the infringements that occurred were done knowingly and were willful in their intent.


**SUMMARY**

- Over an eight-year period, Plaintiffs have realized a per image settlement fee of $9,652 for two hundred and sixty-seven prior photo infringement uses that were settled prior to litigation.

- The Evolve court ruling established a per image license fee of $62,787 applied to four of Plaintiff Werner's images that were used for an average of forty-one months for an infringement matter that went to the court and which has been paid to the Plaintiff Werner.


Plaintiffs have a well-established and accepted Infringement Policy and pricing structure based on thirty-five prior infringement settlement events involving two hundred and sixty-eight of their copyrighted photos where the uses were the same or similar in nature to Defendant's use of Plaintiff IF's images with the only significant unique factor being the length of the unauthorized use.  EXHIBIT 5 therefore will form the basis for the computation of my calculation of the FMV of the known infringement uses.

Applicable conclusions to be used or considered in the FMV calculations based on EXHIBIT 5 are as follows:

12

Exhibit A

1. $9,652 was the average amount Plaintiffs received for each infringed photo ($2,657,140, the total amount received for all 267 infringed photos divided by the 267 infringed photos).

2. On average, each of the thirty-four infringements settled, covered a period of thirty-four months.

3. $512 was the average amount paid for photo per month for each of the photos that were infringed in the thirty-five settlements.

It is my opinion that by taking an average of the relevant amounts in fact realized from thirty-four settlements of infringement matters that Plaintiffs represent were for similar uses to Defendant's infringements that transpired in this dispute, I will be calculating an extremely conservative Fair Market Value for the amount of damages due Plaintiffs in this dispute.

**Accordingly,**

**Four "Femskin" images used for forty-seven months equates to the following FMV to be paid by Defendant:**

Four photos, times forty-seven months times $512 (the average per photo per month calculation) = $96,256.00

**Two "Buffalo Whisperer" images used for forty-three months**

Two photos, times forty-three months times $512 (the average per photo per month calculation) = $44,032.00

**Three "Snuggery" images used for forty-one months**

Three photos, times forty-one months times $512 (the average per photo per month calculation) = $62,967.00

Exhibit A
-  23 -

**Three "Snuggery" images used for forty-three months**

Four photos, times forty-seven months times $512 (the average per photo
per month calculation) = $96,256.00

**Six "Snuggery" images used for fifty-two months**

Six photos, times fifty-two months times $512 (the average per photo per
month calculation) = $159,744.00

**Six "Amazon Eve" images used for eighty-nine months**

Six photos, times eighty-nine months times $512 (the average per photo
per month calculation) = $273,408.00

**Eleven "Huntress" images used for fifty-five months**

Eleven photos, times fifty-five months times $512 (the average per photo
per month calculation) = $309,760.00

**Six "Giraffe Woman" images used for fifteen months**

Six photos, times fifteen months times $512 (the average per photo per
month calculation) = $46,080.00

It should be noted that while there were thirty-seven images involved in this
dispute, five of the "Snuggery" images were used in more than one article and
so there were forty-one actual infringements in total.

## XI.   SUMMARY

**It is my opinion that the Fair Market Value of the infringements in
this case is $1,088,503.00.**

My report has undertaken to review all of the available relevant evidence
and testimony in order to determine the appropriate license value for the
Images as used by Defendant BackChina.

Exhibit A
- 24 -

My report is based on the information provided to me and was based on the information Defendant provided to Plaintiffs or that Plaintiffs were able to determine through their research.  I reserve the right to modify my findings and calculations if I am provided with additional information or documentation that would alter or significantly change the conclusions I have reached or to supplement them if I am asked to do so.

November 21, 2021                          *Gary Elsner*

Date:                                      _____

                                           Gary Elsner

# EXHIBIT 1

**Gary Elsner - Consultant**                                                                    1998 – ongoing

- Value collections for purchase or sale, broker collection for purchase
- Established sales development and retention programs for agencies and photographers.
- Consulting and expert witness services to attorneys.

**American Society of Picture Professionals – Treasurer**                          **2011 - 2016**

**Design Pics Inc.**                                                                              **2008 –ongoing**
                              **VP Operations**
- Manage Worldwide distribution network of selling agents
- Provide general consulting & Management services

StockPhotoFinder.com                                                                     2004 – 2006
**VP Sales & Marketing**
- Partner in Start-up Search Engine Company dedicated to servicing photography industry
- Responsible for recruiting Image Providers and selling customized technology solutions.

Peter Arnold, Inc.          New York, NY                                          2003 – 2009
**General Manager**
- Development of sales and web marketing strategies.
- Negotiate preferred vendor distribution business relationships.

SuperStock, Inc.                                                                            1999 - 2001
**Consultant, President and CEO:**
- Re-engineered company operations and web technologies
- Established company objectives, job descriptions and operating standards.

FPG International LLC, New York, New York                                     1979 – 1998
**Vice President, Sales & Marketing, 1988-1998**
- Development of marketing strategies and sales products.
- Supervised a staff of sixty-five sales executives and associates.

Alpha Photo Associates, Inc. New York, New York                           1968 - 1979
**Sales Manager, 1973 – 1979**
- Negotiated license agreements for the company's key accounts.
- Supervised sales and research staff

**Freelance Photographers Guild, Inc.**                                          **1963 – 1966**
                              **Researcher. Sales**
- Provided research and sales support to company's clients

EDUCATION

Hunter College – NY, NY  - Marketing Management Program, Columbia University Graduate School
PROFESSIONAL ORGANIZATION AFFILIATIONS

American Society of Picture Professionals                          Digital Media Licensing Association

Exhibit A

# EXHIBIT 2

**WEBSITE TERMS AND CONDITIONS OF USE**

Welcome to our website ("Site"). These terms and conditions of use ("Terms") constitute a legal agreement between you and a subsidiary of Incredible Features, Inc. ("Incredible Features"). Your use of this Site constitutes your acceptance of the Terms. If you do not agree with the Terms, please do not use this Site.

**Ownership of This Website and Its Contents**

This Site is owned by Incredible Features. All of the content featured or displayed on this Site, including, but not limited to, text, graphics, photographic images, moving images, sound, illustrations and software ("Incredible Features Content"), is owned by Incredible Features, its licensors or its third-party image partners.

All elements of the Incredible Features Site, including, but not limited to, the general
design and the Incredible Features Content, are protected by trade dress, copyright, moral rights, trademark and other laws relating to intellectual property rights. Except as explicitly permitted under this or another written license or agreement with Incredible Features, no portion or element of this Site or the Incredible Features Content may be copied or retransmitted via any means, and all related rights shall remain the exclusive property of Incredible Features, its licensors or its third-party image partners. You shall indemnify Incredible Features, its subsidiaries, its affiliates and licensors against any losses, expenses, costs or damages incurred by any or all of them as a result of your use of or inability to use the Site, your breach or alleged breach of these Terms or of any representation or warranty contained herein, or your unauthorized use of the Incredible Features Content or Site.

**Copyright Infringement Policy**

In accordance with the Digital Millennium Copyright Act (DMCA) and other applicable law, Incredible Features has adopted a policy of terminating, in appropriate circumstances and at the sole discretion of Incredible Features, account holders who are deemed to be repeat infringers. Incredible Features may also at its sole discretion limit access to the Site and/or terminate the accounts of any users who infringe any intellectual property rights of others, whether or not there is any repeat infringement.

**Use of the Site**

This Site and the Incredible Features Content are intended for customers of Incredible Features. You may not use this Site or the Incredible Features Content for any purpose not related to your business with Incredible Features. Any use of the Incredible Features Content, this Site or any of its functionality for a purpose not permitted by these Terms is grounds for the immediate revocation of any usernames, passcodes or other permissions that may have been granted by Incredible Features for use of this Site.

**Trademarks**

"Incredible Features," "IFI photo," are trademarks of Incredible Features, its subsidiaries or its third-party image partners. All other trademarks, logos and service marks (collectively, the "Trademarks") appearing on the Site are Trademarks of their respective owners. Nothing contained on the Site should be construed as granting, by implication, estoppel or otherwise, any license or right to use any Trademark displayed on the Site without the written permission of its respective owner. Your use of the Trademarks displayed on the Site except as provided in these Terms is strictly prohibited.

**Forums and Other Interactive Services or Areas**

The Site may include discussion forums or other interactive areas or services, including blogs, chat rooms, bulletin boards, message boards, online hosting or storage services, or other areas or services in which you or third parties create, post or store any content, messages, comments, materials or other items on the Site ("Interactive Areas"). You are solely responsible for your use of such Interactive Areas and use them at your own risk. By using any Interactive Areas, you agree not to post, upload, transmit, distribute, store, create or otherwise publish through the Site any of the following:

a. Any message, comment, data, information, text, music, sound, photos, graphics, code or other material ("User Content") that is unlawful, libelous, defamatory, obscene, pornographic, harmful to minors, indecent, lewd, suggestive, harassing, threatening, invasive of privacy or publicity rights, abusive, inflammatory, fraudulent or otherwise objectionable;

b. User Content that would constitute, encourage or provide instructions for a criminal offense, violate the rights of any party or that would otherwise create liability or violate any local, state, national or international law, including, without limitation, the regulations of the U.S. Securities and Exchange Commission or any rules of a securities exchange such as the New York Stock Exchange, the American Stock Exchange or the NASDAQ;

c. User Content that may infringe any patent, trademark, trade secret, copyright or other intellectual or proprietary right of any party. By posting any User Content, you represent and warrant that you have the lawful right to distribute and reproduce such User Content;

d. User Content that impersonates any person or entity or otherwise misrepresents your affiliation with a person or entity;

e. Unsolicited promotions, political campaigning, advertising or solicitations;

17

Exhibit A

- 27 -

f. Private information of any third party, including, without limitation, addresses, phone numbers, email addresses, Social Security numbers and credit card numbers;

g. Viruses, corrupted data or other harmful, disruptive or destructive files; and

h. User Content that, in the sole judgment of Incredible Features, is objectionable or which restricts or inhibits any other person from using or enjoying the Interactive Areas or the Site, or which may expose Incredible Features or its users to any harm or liability of any type.

Incredible Features takes no responsibility and assumes no liability for any User Content posted, stored or uploaded by you or any third party, or for any loss or damage thereto, nor is Incredible Features liable for any mistakes, defamation, slander, libel, omissions, falsehoods, obscenity, pornography or profanity you may encounter. Your use of Interactive Areas is at your own risk. As a provider of interactive services, Incredible Features is not liable for any statements, representations or User Content provided by its users in any public forum, personal homepage or other Interactive Area. Although Incredible Features has no obligation to screen, edit or monitor any of the User Content posted in any Interactive Area, Incredible Features reserves the right, and has absolute discretion, to remove, screen or edit any User Content posted or stored on the Site at any time and for any reason without notice, and you are solely responsible for creating backup copies of and replacing any User Content you post or store on the Site at your sole cost and expense. Any use of the Interactive Areas or other portions of the Site in violation of the foregoing violates these Site Terms and may result in, among other things, termination or suspension of your rights to use the Interactive Areas and/or the Site. You acknowledge and agree that Incredible Features may access, use or disclose any information about you or your use of this Site, including, without limitation, any User Content to comply with the law or any legal process; protect and defend the rights or property of Incredible Features; or to protect the safety of our company, employees, customers or the public.

If you post User Content to the Site, unless we indicate otherwise, you grant Incredible Features and its affiliates a nonexclusive, royalty-free, perpetual, irrevocable and fully sublicensable right to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, perform and display such User Content throughout the world in any media. You grant Incredible Features and its affiliates and sublicensees the right to use the name that you submit in connection with such content, if they choose. You represent and warrant that (a) you own and control all of the rights to the User Content that you post or you otherwise have the right to post such User Content to the Site; (b) the User Content is accurate and not misleading; and (c) use and posting of the User Content you supply does not violate these Site Terms and will not violate any rights of or cause injury to any person or entity.

**Disclaimers**

THIS SITE AND THE INCREDIBLE FEATURES CONTENT ARE PROVIDED "AS IS" AND INCREDIBLE FEATURES AND ITS DIRECTORS, EMPLOYEES, CONTENT PROVIDERS, AGENTS AND AFFILIATES EXCLUDE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY WARRANTY, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, SATISFACTORY QUALITY OR FITNESS FOR A PARTICULAR PURPOSE. INCREDIBLE FEATURES WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE OR THE $PUNITIVE AND CONSEQUENTIAL DAMAGES. THE FUNCTIONS EMBODIED ON OR IN THE MATERIALS OF THIS SITE ARE NOT WARRANTED TO BE UNINTERRUPTED OR WITHOUT ERROR. YOU, NOT INCREDIBLE FEATURES, ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION DUE TO YOUR USE OF THIS SITE.

Incredible Features uses reasonable efforts to ensure the accuracy, correctness and
reliability of the Incredible Features Content, but we make no representations or warranties as to the Incredible Features Content's accuracy, correctness or reliability. Images of people or places displayed on the Site are either the property of, or used with permission by, Incredible Features or other third parties. The use of these images by you, or anyone else authorized by you, is prohibited unless specifically permitted by these Terms or specific permission provided elsewhere on the Site or by separate license or agreement. Any unauthorized use of these images may violate copyright laws, trademark laws, the laws of privacy and publicity, and communications' regulations and statutes.

There may be links to other websites from this Site; however, these other websites are not controlled by Incredible Features and we are not responsible for any content contained on any such website or any loss or damage suffered by you in relation to your use of such websites. You waive any and all claims against Incredible Features
regarding the inclusion of links to outside websites or your use of those websites. Additionally, parties other than Incredible Features provide services from this Site. For example, you may obtain information regarding certain photographer's services
through Incredible Features Photo Assignments. Incredible Features does not evaluate or warrant the offerings or services of these parties, and except as otherwise provided by written agreement, does not assume any liability for the actions, product, services or content of these parties.

Some US states and foreign countries do not permit the exclusion or limitation of implied warranties or liability for certain categories of damages. Therefore, some or all of the limitations above may not apply to you to the extent they are prohibited or
superseded by state or national provisions.

**Governing Law and Venue**

This Agreement shall be interpreted, construed and governed by the laws of the State of California, USA, without reference to its laws relating to conflicts of law and not including the provisions of the 1980 United Nations Convention on Contracts for the International Sale of Goods. Users of this Site agree that any and all disputes arising from the use of this Site, or the ordering of materials from this Site, shall be settled by binding arbitration by a single arbitrator to be held in Los Angeles, California pursuant to the then current rules of the American Arbitration Association. Notwithstanding the foregoing, however, Incredible Features shall have the right to commence and prosecute any legal or equitable action or proceeding before any non- US court of competent jurisdiction to obtain injunctive or other relief in the event that, in the opinion of Incredible Features, such action is necessary or desirable beyond that relief immediately afforded through an arbitration proceeding.

**No Waiver, Severability**

18

Exhibit A

No action of Incredible Features, other than an express written waiver or amendment, may be construed as a waiver or amendment of any of these Terms. If any clause in these Terms is found to be unenforceable, wherever possible this will not affect any other clause and each will remain in full force and effect. We reserve the right to change these Terms, the Incredible Features Content displayed on this Site, and any license or product prices contained on the Site, and any information or license terms without prior notice. These Terms set out the entire agreement between Incredible Features and you relating to your use of this Site.

19

Exhibit A

**EXHIBIT 3**



Exhibit A
- 30 -

**EXHIBIT 4**



Exhibit A

-  31 -

# EXHIBIT 5

| Infringer | SUBJECT | DATE | # image | GROSS AMOUNT | Per Photo $ | # of Mo | Per Mo/photo |
|---|---|---|---|---|---|---|---|
| Redacted | Giant George, Surfing Goat | 5/8/2014 | 7 | $70,000 | $10,000 | 37 mo | $270 |
| Redacted | Dille the Deer, Snuggery, Small Mom, Giant George | 6/10/2015 | 13 | $220,000 | $16, 923 | 41 mo | $413 |
| Redacted | Snuggery | 3/31/2016 | 2 | $51,000 | $25,500 | 25 mo | $1,020 |
| Redacted | Giant George, Inri Cristo, Surfing Goat, Wingwalker | 4/12/2016 | 17 | $200,000 | $11,765 | 8 mo | $1,470 |
| Redacted | Giant George | 5/23/2016 | 1 | $21,500 | $21,500 | 48 mo | $448 |
| Redacted | Surfing Goat, Snuggery, Giant George, Duchess of Nails | 8/4/2016 | 6 | $99,900 | $16,650 | 31 mo | $537 |
| Redacted | Dutchess of Nails, Giant George, Amazon Eve, Inri Cristo | 12/20/2017 | 10 | $55,000 | $5,500 | 30 mo | $183 |
| Redacted | Small Mom, Armless Bodybuilder, Giant George, Amazon Eve, Snuggery, Miss Iowa, Buffalo Whisperer, Sonjoined Twin | 12/28/2017 | 32 | $285,000 | $8,906 | 24 mo | $371 |
| Redacted | Huntress, Snuggery | 2/2/2018 | 14 | $250,000 | $17,857 | 41 mo | $436 |
| Redacted | Airplane Home, Amazon Eve, Giant George, Small Mom, Snuggery, Surfing Goat, Two Legged Dog, Wolf Girl | 2/13/2018 | 25 | $125,000 | $12,500 | 13 mo | $962 |
| Redacted | bernal twins, small mom, wiley coyote, snuggery | 10/19/2018 | 13 | $225,000 | $17,308 | 32 mo | $541 |
| Redacted | Surfing Goat | 12/14/2018 | 1 | $22,000 | $22,000 | 12 mo | $1,833 |
| Redacted | Giant George | 12/14/2018 | 1 | $22,000 | $22,000 | 60 mo | $367 |
| Redacted | Surfing Goat | 12/19/2018 | 1 | $35,000 | $35,000 | 47 mo | $745 |

22

Exhibit A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Redacted | Backwards Runner | 1/11/2019 | 1 | $6,700 | $6,700 | 31 mo | $216 |
| Redacted | Surfing Goat | 2/20/2019 | 1 | $9,500 | $9,500 | 72 mo | $132 |
| Redacted | Giant George | 2/25/2019 | 1 | $20,000 | $20,000 | 99 mo | $202 |
| Redacted | Surfing Goat, Snuggery | 2/27/2019 | 2 | $18,750 | $9,375 | 30 mo | $313 |
| Redacted | Surfing Goat | 4/8/2019 | 1 | $14,500 | $14,500 | 37 mo | $392 |
| Redacted | Surfing Goat | 4/25/2019 | 1 | $6,000 | $6,000 | 34 mo | $176 |
| Redacted | Surfing Goat | 5/17/2019 | 1 | $25,750 | $25,750 | 23 mo | $1,120 |
| Redacted | Surfing Goat | 5/17/2019 | 1 | $10,000 | $10,000 | 72 mo | $139 |
| Redacted | Eye Tattoo | 8/5/2019 | 2 | $10,000 | $5,000 | 5 mo | $1,000 |
| Redacted | FemSkin | 10/9/2019 | 12 | $50,000 | $4,166 | 51 mo | $82 |
| Redacted | Lady Bullrider | 10/26/2020 | 1 | $10,000 | $10,000 | 20 mo | $500 |
| Redacted | Airplane Home, Wiley Coyote, Giraffe Woman | 11/6/2019 | 17 | $80,000 | $4,705 | 22 mo | $214 |
| Redacted | Giraffe Woman | 11/14/2019 | 5 | $25,000 | $5,000 | 18 mo | $278 |
| Redacted | Surfing Goat | 4/17/2020 | 1 | $10,000 | $10,000 | 24 mo | $417 |
| Redacted | Airplane Home, Mr. Stubbs | 6/24/2020 | 10 | $125,000 | $12,500 | 13 mo | $962 |
| Redacted | Mr. Stubbs, Giant George, Airplane Home | 7/28/2020 | 23 | $175,000 | $7,954 | 36 mo | $221 |
| Redacted | Huntress | 10/14/2020 | 1 | $24,500 | $24,500 | 36 mo | $680 |
| Redacted | Giraffe Woman, Airplane Home | 12/1/2020 | 12 | $120,000 | $10,000 | 24 mo | $417 |
| Redacted | Snuggery, Triplets Convention, Half Mom | 5/7/2021 | 19 | $80,000 | $4,210 | 36 mo | $117 |
| Redacted | FemSkin, Surfing Goat, Giraffe Woman | 9/22/2021 | 12 | $75,000 | $6,250 | 28 mo | $223 |
| | | **Totals** | **267** | **$2,577,100** | | 1160 mo | $17,397 |
| | | | | **$ Ave Photo** | **$9,652.00** | | |
| | | | | | **Ave # mo** | 34 | |
| | | | | | **Ave $ per photo per month** | | $512 |

Exhibit A

- 33 -

# EXHIBIT 6



Exhibit A

- 34 -

**EXHIBIT 7**



Exhibit A

- 35 -

**EXHIBIT 8**



Exhibit A

- 36 -